**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| SHARLOT KELLY, individually and on behalf of all others similarly situated, | CIVIL ACTION NO. 1:14-cv-01499 |
| *Plaintiff*, | |
| v. | |
| KOHL'S DEPARTMENT STORES, INC., a Delaware corporation, | |
| *Defendant*. | |

**DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S**
**MEMORANDUM IN SUPPORT OF MOTION TO**
**STRIKE CLASS ALLEGATIONS AND TO STAY ACTION**

Defendant Kohl's Department Stores, Inc. ("Kohl's"), by and through its attorneys Taft Stettinius & Hollister LLP and Kelley Drye & Warren LLP, respectfully submits this Memorandum of Law in support of its motion to strike the class allegations and to stay this action pursuant to the doctrine of primary jurisdiction.  In addition to this Memorandum of Law, Kohl's relies on the accompanying Request for Judicial Notice and the Declaration of Rebecca Hoeft ("Hoeft Declaration"), both of which are being filed contemporaneously with this memorandum in support of Kohl's motion.

## PRELIMINARY STATEMENT

Plaintiff Sharlot Kelly ("Plaintiff") has brought this putative class action against Kohl's under the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227.  Plaintiff alleges that Kohl's violated Section 227(b)(1)(A)(iii) of the TCPA by placing debt collection calls to her and other consumers on their cellular phones using an artificial or prerecorded device, without

prior express consent.  Plaintiff effectively argues that Kohl's dialed the "wrong number" when it placed calls to Plaintiff and the absent class, reaching persons who were not Kohl's credit card customers.  Kohl's brings the instant motion to strike Plaintiff's class allegations and to stay this action pending the resolution of two petitions pending before the Federal Communications Commission (the "FCC").

Plaintiff's class allegations should be stricken because she is not a member of the class that she seeks to represent.  In her Amended Class Action Complaint ("Amended Complaint"), Plaintiff alleges that neither she nor the absent class members are Kohl's credit card customers, and alleges that neither she nor the absent class have any relationship with Kohl's.  Plaintiff seeks to represent a putative class defined as:

> All persons in the United States (1) **who do not have a Kohl's shopping card** or otherwise owe a debt to Kohl's; (2) who received from or on behalf of Kohl's a call to their cellular phones featuring an artificial or pre-recorded voice, or was made using an automatic telephone dialing system; and (3) for whom Kohl's does not have any record evincing prior express consent to receive such calls.

*See* Amended Complaint, Docket Entry ("d/e") No. 26 at, ¶ 24) (emphasis added).  Ostensibly, because the TCPA provides that there is no violation where prior express consent is obtained, Plaintiff's Amended Complaint and class definition focus significantly on the allegation that neither Plaintiff nor the absent class are or were Kohl's credit card account holders.  The FCC has made clear, including in a ruling issued in 2008, that the provision of a cell phone number as part of a credit application reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number.  Thus, Plaintiff's allegation that she and the absent class are not Kohl's card holders is a critical element of her Amended Complaint.  Kohl's records, however, demonstrate that Plaintiff is, in fact, a Kohl's credit card customer and that Plaintiff agreed to the terms of the Kohl's Cardmember Agreement.  As a result, Plaintiff is not a member of the class that she seeks to represent, and this action cannot continue as a class action.

In addition, and regardless of whether this Court is inclined to strike Plaintiff's class allegations, this action should be stayed because there are two petitions pending before the FCC that bear directly on Plaintiff's and the absent class's "wrong number" claims, and whether and how this case should proceed. By way of background, in connection with the issuance of a Kohl's private label credit card, a cardholder agrees to a Kohl's Cardmember Agreement, and in connection therewith, provides a telephone number for Kohl's to call for account-related purposes. In accordance with the terms of the Cardmember Agreement, Kohl's places non-telemarketing, account-related calls to its Kohl's private label credit card customers, including to remind customers when they have an overdue credit card balance. As set forth above, such informational and debt collection calls are permitted under the TCPA because Kohl's cardholders have consented to receive the calls at the telephone numbers that they opt to provide to Kohl's in connection with their accounts.

Kohl's records confirm that the cellular telephone number on which Plaintiff claims that she received the calls at issue in this litigation (the "Phone Number At Issue") was provided to Kohl's by one of its customers as the contact number associated with a Kohl's private label credit card account, held by an individual with a name different from Plaintiff's. (*See* Hoeft Decl., at ¶ 9.) Here, the challenged calls were intended for the Kohl's account holder who provided the Phone Number At Issue to Kohl's in connection with her Kohl's Cardmember Agreement. (*Id.*, at ¶ 11.)

Plaintiff claims that Kohl's should face extraordinary liability for otherwise legal calls to a number that, unbeknownst to Kohl's, was either reassigned to Plaintiff or incorrectly provided by its customer in the first instance. Not surprisingly, such an anomalous result has created an uproar in the regulated community. As a result, there are two petitions currently under consideration by the FCC, the regulatory body that implements the TCPA, to address: (1) the

definition of "called parties" and the establishment of safe harbors for wrong number non-telemarketing calls; and (2) the time period within which a company is expected to remove a wrong number from its dialing lists upon notice.  The FCC is expected to release its opinion on these matters shortly.  If the FCC establishes a safe harbor and/or a grace period within which companies may cease calls upon learning that they have a wrong or reassigned number, then Plaintiff's and the absent class members' claims may not be actionable as a matter of law.  For the reasons set forth more fully below, under the doctrine of primary jurisdiction, it is respectfully submitted that these petitions should be decided before this Court addresses the merits of Plaintiff's claims or permits discovery in this case.  The doctrine of primary jurisdiction is designed to stay cases, such as this one, so that neither the Court nor the parties invest significant resources in discovery, discovery disputes, or other motion practice until key questions impacting the case are resolved.  In fact, a number of other federal courts have stayed TCPA actions pending the FCC's resolution of these petitions.  *See Gusman v. Comcast Corp*., No. 13-cv-1049, 2014 WL 2115472, at *3-4 (S.D. Cal., May 21, 2014) (in an action brought under the TCPA where the defendant attempted to collect on a debt by calling a number that had been reassigned to the plaintiff, granting a stay pending outcome of United Healthcare and ACA petitions); *Barrera v. Comcast Holdings Corp*., No. 14-cv-00343, 2014 WL 1942829, at *34 (N.D. Cal. May 12, 2014) (same); *Matlock v. United Healthcare*, No. 2:13–cv–02206, 2014 WL 1155541, at *1-2 (E.D. Cal. Mar. 20, 2014) (granting stay and denying Plaintiff's Motion to Certify Class pending outcome of United Healthcare Petition); *Fontes v. Time Warner Cable Inc*., 2:14-cv-02060, 2014 WL 2153919, at *2 (C.D. Cal. May 19, 2014) (declining to address whether action should be stayed under the primary jurisdiction doctrine but staying action on its own motion for 120 days pursuant to its inherent power to control its docket).

Thus, as the petitions before the FCC necessarily implicate issues to be decided by this Court and that will inform the scope of discovery (or determine whether the case should proceed at all), it is respectfully submitted that this Court should exercise its discretion to stay this action, either on grounds of primary jurisdiction, and/or its own inherent power to control its docket.

**FACTUAL BACKGROUND/PROCEDURAL HISTORY**

**A.      Procedural History**

On September 14, 2014, Plaintiff filed a putative Class Action Complaint (the "Initial Complaint") against Kohl's alleging that it violated the TCPA when, beginning in or around August 2014, it allegedly placed prerecorded message calls to Plaintiff's cellular phone.  (*See* Complaint, d/e 1, at ¶¶ 12-18.)  In her Initial Complaint, Plaintiff based her TCPA claims on her allegation that she received "unsolicited and unwanted *telemarketing* calls" on her cellular phone.  (*Id.*, ¶¶ 32-33 (emphasis added).)  Plaintiff claimed that Kohl's violated two separate provisions of the TCPA: (i) Section 227(b)(1)(A)(iii), which prohibits calls made without the prior express consent of the called party using an automatic telephone dialing system or an artificial or prerecorded device to a telephone number assigned to a cellular telephone service; and (ii) Section 227(b)(1)(B), which makes it unlawful to initiate certain types of calls to a "residential telephone line."  47 U.S.C. § 227(b)(1)(B).

On November 7, 2014, Kohl's moved to dismiss the Initial Complaint under Federal Rule of Civil Procedure 12(b)(6) because the cause of action pled was based on "telemarketing calls," but Plaintiff had not alleged that she received a single telemarketing call from Kohl's.  In addition, Plaintiff's claim that Kohl's violated Section 227(b)(1)(B) of the TCPA failed on its face because: (a) that provision of the TCPA does not apply to calls made to cellular phone numbers; and (b) to the extent Plaintiff asserts that her claims are based upon debt collection calls, that provision of the TCPA does not apply.

Rather than opposing Kohl's Motion to Dismiss, on November 17, 2014, Plaintiff filed the Amended Complaint.

**B.      Plaintiff's Amended Complaint**

In her Amended Complaint, Plaintiff removed all references to telemarketing calls, and instead now claims that Kohl's made "unsolicited and unwanted debt collection calls to the cellular telephone numbers belonging to Plaintiff and the other Class members without their prior express consent." (Amended Complaint, ¶ 32.)  Plaintiff also removed her claim under Section 227(b)(1)(B) of the TCPA, which applies to calls made to residential telephone lines, and only alleges that Kohl's violated Section 227(b)(1)(A)(iii).

To support her claim under Section 227(b)(1)(A)(iii) of the TCPA, Plaintiff claims that "[i]n or around August 2014, Plaintiff Sharlot Kelly began receiving calls . . . on her cellular telephone number" (the "Phone Number At Issue").  (*Id.*, at ¶ 18.)  Plaintiff alleges that these calls "inquired whether Plaintiff was a person of another name (i.e., Kohl's was seeking someone other than Sharlot Kelly)," and were made in an attempt to collect a debt owed to Kohl's by someone other than Plaintiff.  (*Id.* at ¶ 19.)  Plaintiff alleges that she "never had an account or debt with Kohl's and never provided prior express consent to receive" the calls from Kohl's. (*Id.*, at ¶ 21.)  Based on these allegations, Plaintiff alleges in the Amended Complaint a single cause of action against Kohl's, claiming that it violated 47 U.S.C. § 227(b)(1)(A)(iii).

Plaintiff also seeks to represent a putative class defined as follows:

> All persons in the United States (1) who do not have a Kohl's shopping card or otherwise owe a debt to Kohl's; (2) who received from or on behalf of Kohl's a call to their cellular phones featuring an artificial or pre-recorded voice, or was made using an automatic telephone dialing system; and (3) for whom Kohl's does not have any record evincing prior express consent to receive such calls.

(*Id.*, at ¶ 24.)  In an attempt to support the class claims, Plaintiff alleges in her Amended Complaint that Kohl's placed prerecorded message calls to other consumers "who have no

relationship, charge card or debt with Kohl's, and who have not consented to receive any such calls (nor any reason or opportunity to have consented)."[1]  (*Id.*, at ¶ 14.)  In addition, Plaintiff's Amended Complaint includes references to alleged "online" consumer complaints that were supposedly made by unidentified consumers who claim that they received calls from Kohl's, but have "no relationship with Kohl's whatsoever."  (*Id.*, at ¶ 15.)

**C.     Kohl's Records Reflect That It Dialed the Phone Number at Issue Because It Was Provided to It by One of Its Credit Card Customers.**

Kohl's Cardmember Agreements require Kohl's credit card customers to consent to be contacted by telephone and otherwise regarding account-related issues.   Specifically, the Cardmember Agreement provides as follows:

> 20. Communications: You agree that we may communicate with you by mail, telephone, email, fax, prerecorded message, automated voice, text message, or other means allowed by law regarding your Account. **You authorize us, or anyone acting on our behalf, to call or send a text message to any number you provide or to any number where we reasonably believe we can contact you. These include calls to mobile, cellular, or similar devices, and calls using automatic telephone dialing systems and/or prerecorded messages.** We may also send an email to any address where we reasonably believe we can contact you. You agree that we may monitor or record any conversation or other communication with you.

> 21. Established Business Relationship: You further agree that you have an established business relationship with us and with Kohl's and that we both may contact you from time to time regarding your Account and products and services that we or Kohl's believes may be of interest to you. You agree that all such contacts are not unsolicited and may be monitored to assure quality service.

(*See* Hoeft Decl., Exhibit ("Ex.") A, §§ 20-21) (emphasis added).)   Kohl's places non-

---

[1] Plaintiff's Amended Complaint and class definition focus significantly on the allegation that neither Plaintiff nor the absent class are or were Kohl's credit card account holders because the TCPA provides that there is no violation where prior express consent is obtained.  The FCC has made clear, including in a ruling issued in 2008, that "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt."  *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991 (2008 Report and Order)*, 23 FCC Rcd. 559, 564, 2008 WL 65485, at *3 (Jan. 4, 2008) (reiterating the same ruling).

telemarketing, account-related calls to its customers on the telephone numbers provided to Kohl's by its customers, including calls to remind its customers of an overdue balance, in accordance with the terms of the Kohl's Cardmember Agreement.

Kohl's records reflect that a Kohl's cardholder, having a name different than Plaintiff's, provided the Phone Number At Issue to Kohl's as her point of contact in connection with her Kohl's credit card account.  (*Id.*, at ¶ 9.)  Kohl's records reflect that in or about August 2014, the account associated with the Phone Number At Issue became delinquent, and that Kohl's placed calls to the Phone Number At Issue to inform its customer of the overdue balance.  (*Id.*, at ¶ 11.) These calls were intended for the Kohl's private label credit card account holder who provided Kohl's with the Phone Number At Issue.  (*Id.*)

### D.      Kohl's Records Reflect That Plaintiff Is a Kohl's Credit Card Customer.

Kohl's records reflect that Plaintiff became a Kohl's credit card customer on April 9, 2013.  (*Id.*, at ¶ 12.)  Plaintiff applied for and was approved for a Kohl's credit card in a Kohl's retail store.  (*Id.*)  When Plaintiff opened her Kohl's credit card, she signed an electronic keypad agreeing to the Kohl's Cardmember Agreement.  (*Id.*, at ¶ 13, Ex. B.)  Kohl's records also reflect that Plaintiff provided the Phone Number at Issue as her contact phone number at the time that she opened her Kohl's credit card account.  (*Id.*, at ¶ 14.)  Plaintiff's Kohl's credit card account is presently in active status.  (*Id.*, at ¶ 15.)

### <u>LEGAL ARGUMENT</u>

### I.      THIS COURT SHOULD STRIKE PLAINTIFF'S CLASS ALLEGATIONS FROM THE AMENDED COMPLAINT.

To be a proper class representative, the named plaintiff must be a member of the class that he or she seeks to represent.  *Davis v. Ball Memorial Hosp. Assoc., Inc.*, 753 F.2d 1410, 1420 (7th Cir. 1985).  This Court should strike Plaintiff's class allegations because, as set forth above, Plaintiff is demonstrably not a member of the class that she seeks to represent.

Specifically, the Amended Complaint defines the Class as persons "who do not have a Kohl's shopping card," (Amended Complaint, ¶ 24), but Plaintiff will not be able to refute that she has a Kohl's credit card. (*See* Hoeft Decl., at ¶¶ 9-15.)

Federal Rule of Civil Procedure 23(c)(1)(A) provides that the court, "[a]t an early practicable time . . . must determine by order whether to certify the action as a class action."[2] Fed. R. Civ. P. 23(c)(1)(A). Rule 23(d)(1)(D) explains that, "[i]n conducting an action under this rule, the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). It is well settled that, in appropriate circumstances, a court may dispose of class allegations at the pleading stage. *See Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011) (affirming dismissal of class allegations at pleading stage); *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (striking class allegations at the pleading stage); *Wright v. Family Dollar, Inc.,* No. 10-C-4410, 2010 WL 4962838, at \*1 (N.D. Ill. Nov. 30, 2010) ("[G]iven that Rule 23(c)(1)(A) instructs courts to determine whether a class may be certified '[a]t an early practicable time,' courts may—and should—address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained."); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim . . . .").

---

[2] Judge Posner of the Court of Appeals for the Seventh Circuit, appreciating the economics of TCPA class action litigation, invited early review of a putative class action. *See Creative Montessori Learning Ctrs. v. Ashford Gear LLC,* 662 F.3d 913, 915 (7th Cir. 2011) (because of their coercive effect, "[c]lass actions, unless dismissed at an early stage, are typically settled rather than litigated to judgment."); *see also Boyce v. Wachovia Sec.*, No. 5:09-CV-263, 2010 WL 1253744, at \*7 (E.D.N.C. Feb. 17, 2010), report and recommendation adopted, 2010 WL 1253737 (E.D.N.C. Mar. 29, 2010) ("The justification for an early determination of class certification is the prevention of a waste of the parties' resources and judicial resources to conduct discovery on class certification.")

Such appropriate circumstances include where it is apparent at the pleading stage that no class can be certified.  *See John*, 501 F.3d at 445 ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings."); *see also Cornette v. Jenny Garton Ins. Agency, Inc.*, No. 2:10-CV-60, 2010 WL 2196533, *2-3 (N.D. W.Va. May 27, 2010) (striking class allegations holding that "it appears from the plaintiff's allegations that individual issues substantially outweigh any conceivable issues that may be common to the purported class"); *Bearden v. Honeywell Int'l, Inc.*, No. 3:09-01035, 2010 WL 1223936, *11 (M.D. Tenn. March 24, 2010) ("Because it is apparent from the face of the Complaint that individual issues will predominate the resolution of the unjust enrichment claim, the court will strike the plaintiffs' class allegations.").[3]

Although plaintiffs often suggest that class certification determinations should await discovery, courts recognize that where, as here, discovery would simply expend resources without altering the result, that expense and delay is unwarranted.  *See, e.g., Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) ("the plaintiff bears the burden of advancing a *prima facie* showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations.  Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion."); *Baum v. Great W. Cities, Inc., of N.M.*, 703 F.2d 1197, 1210 (10th Cir. 1983) (affirming dismissal of class allegations and denial of class discovery because it would impose an "unfair expense"); *Lawson v. Life of the South Ins.*

---

[3] *See also Hovsepian v. Apple, Inc.*, No. 08–5788, 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009) (striking class allegations at pleading stage and opining that "[u]nder Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained."); *Muehlbauer v. General Motors Corp.*, 431 F. Supp. 2d 847, 870 (N.D. Ill. 2006) (holding that a motion to strike class allegations can be an appropriate device to determine whether a case will proceed as a class action); *PFT of America, Inc. v. Tradewell, Inc.*, No. 98 CIV. 6413, 1999 WL 179358, at *1 (S.D.N.Y. Mar. 31, 1999) (striking class allegations where complaint did not identify a cognizable class).

*Co.,* 286 F.R.D. 689, 695 (M.D. Ga. 2012) (holding that issues for class allegations, in some instances, "are sufficiently represented in the pleadings" and "further pursuit of discovery on class certification issues is not necessary."); *In re Yasmin and Yaz (Drospirenone) Mktg.,* 275 F.R.D. 270, 274 (S.D. Ill. 2011) (striking class allegations where "no amount of time or discovery can cure these deficiencies [i.e., failure to satisfy Rule 23(b)'s predominance requirement].")

Here, no amount of discovery will change the fact that Plaintiff is a Kohl's credit card customer, and was a Kohl's credit card customer at the time that the telephone calls at issue were placed. Thus, Plaintiff is not a member of the class that she seeks to represent and, consequently, this action cannot proceed on a class basis. This Court should, therefore, strike the class allegations set forth in the Amended Complaint.

## II. THE LITIGATION SHOULD BE STAYED PENDING RESOLUTION OF THE UNITED HEALTHCARE AND ACA PETITIONS.

### A. The FCC Is Expected to Rule in the Near Term on Two Petitions That Will Directly Impact This Case.

On February 6, 2014, the FCC issued a public notice requesting comment on a Petition for Expedited Declaratory Ruling filed by United Healthcare Services, Inc. (the "United Healthcare Petition"), which asked the Commission to clarify the applicability of the TCPA to "informational, non-telemarketing autodialed and prerecorded calls to wireless numbers for which prior express consent has been obtained but which, unbeknownst to the calling party, have subsequently been reassigned from one wireless subscriber to another." (Request for Judicial Notice ("RJN"), Ex. A.) The FCC received comments, including a March 10, 2014 comment requesting that the FCC address a similar problem with wrong numbers – those that are not reassigned, but were provided incorrectly by the customer in the first instance. (*See id.*, at Ex. C.) United Healthcare proposed a definition for "called party" under the TCPA, as well as a

11

good faith exception, that would protect a caller until it learns that a customer-provided number is wrong and has had a reasonable opportunity to correct its records.  (*See id.*, at Ex. B; *see also* RJN, Ex. C.)

On February 11, 2014, ACA International ("ACA") filed a separate FCC Petition for Rulemaking (the "ACA Petition") supporting the United Healthcare Petition.  (*See id.*, at Ex. E.) On February 21, 2014, the FCC issued a public notice requesting comment on the ACA Petition. (*See id.*, Ex. D.)  The ACA Petition requested formal rulemaking on similar issues.  The ACA Petition seeks a ruling to "clarify that prior express consent attaches to the person incurring a debt, and not the specific telephone number provided by the debtor at the time a debt was incurred . . . ."  (*See id.*, Ex. E, at p. 1.)  The ACA Petition also requests a safe harbor for autodialed "wrong number" non-telemarketing debt collections calls to wireless numbers.  (*Id.*, at p. 2.)  The ACA Petition explains that the safe harbor is needed to provide callers with a reasonable opportunity to comply with the rules and that without a safe harbor, the TCPA is "'demand[ing] the impossible' from callers trying to comply with the statute."  (*Id.*)

Such a safe harbor is not unprecedented.  As the ACA Petition notes, the FCC has previously established in 2004, a 15-day safe harbor for calls placed to wireless numbers that had been ported from wireline service to wireless service.  Moreover, in the case of telemarketing calls and "Do Not Call" ("DNC") requests, the FCC provides telemarketers with a reasonable amount of time (30 days) to implement such requests and to add numbers to internal DNC lists. ACA urges the FCC to create a similar safe harbor once callers become aware that a number is a wrong number.  (*Id.* at p. 16.)

It is anticipated that the FCC will issue an order in the near term on the pending Petitions. Indeed, on August 1, 2014, more than a dozen members of Congress made a request to the FCC for a swift resolution of these issues, noting that the TCPA is being "unfairly applied with great

unintended consequences" to non-telemarketing calls.  (*See id.*, at Ex. F.)    Rather than its intended application, these members of Congress noted that the TCPA "has turned a vehicle to protect consumers from unwanted random solicitations into a booming practice for opportunistic attorneys to take advantage of ambiguous rules and profit personally by receiving millions of dollars by suing businesses and overburdening the courts while providing only nominal relief to their clients."  (*Id.*)

In addition, on September 26, 2014, in a separate TCPA case involving wrong number allegations pending before the United States District Court for the Northern District of California, the FCC submitted a Status Report at the request of the Court on the United Healthcare and ACA Petitions.  (*Id.*, at Ex. G.)  The FCC's Status Report indicated that the Commission has made substantial progress and is currently in the process of formulating recommendations on the pending petitions that will be presented to the FCC's commissioners for a vote.  In October 2014, the FCC Chairman responded to Congress' August letters, and assured that the United Healthcare and ACA Petitions were being processed as "expeditiously as possible."  (*See Id.*, at Ex. H.)

As set forth above, if the FCC accepts either of the positions set forth in the pending Petitions, the calls allegedly placed to Plaintiff as collection calls may not be actionable.

### B.    The Court Should Stay This Case Under the Primary Jurisdiction Doctrine.

#### 1.    The primary jurisdiction doctrine.

The primary jurisdiction doctrine "[i]s a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision-making responsibility should be performed by the relevant agency rather than the courts."  *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 780 (9th Cir. 2002).  The doctrine allows courts to determine that "[a]n otherwise cognizable claim implicates technical and policy questions that

should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark v. Time Warner Cable*, 523 F.3D 1110, 1114 (9th Cir. 2008) (citing *Syntek*, 307 F.3d at 780); *see also Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002) (the primary jurisdiction doctrine applies where a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency).

This Court is empowered to stay this litigation or dismiss the Plaintiff's Complaint without prejudice "pending the resolution of an issue within the special competence of an administrative agency." *Clark*, 523 F.3d at 1114 (affirming dismissal of plaintiff's complaint and referring issue to the FCC).

> **2.    The primary jurisdiction doctrine applies to the allegations in plaintiff's complaint.**

"In situations where an agency's pending decision applies to the precise issue presented by the litigation, application of the primary jurisdiction to stay the case is appropriate." *Barrerra*, 2014 WL 1942829, at *3; *Hart v. Comcast of Alameda*, No. C07-6350, 2008 WL 2610787, *2 (N.D. Cal. June 25, 2008) (staying case on primary jurisdiction grounds where FCC had announced it would seek public comment on two separate petitions). While there are no necessary factors that this Court must consider, "[c]ourts in considering the issue have traditionally employed such factors as (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781.

All of these factors are present here. First, Plaintiff's entire case rests upon the FCC's determination of the issues presented in the United Healthcare and ACA Petitions – (a) whether

the TCPA is violated by calls to a cellular telephone number for which prior consent existed, but that has been subsequently reassigned or was wrongly provided in the first instance; and (b) whether there is a grace period within which companies may cease calls upon learning that they have a wrong or reassigned number.

Second, there is no question that "[C]ongress has delegated the FCC with the authority to make rules and regulations to implement the TCPA." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009); *see also Barrerra*, 2014 WL 1942829, at *2 (staying TCPA litigation pending resolution of United Healthcare and ACA Petitions finding that "[C]ongress has placed the uniform interpretation and comprehensive enforcement of the TCPA within the primary jurisdiction of the FCC."). Third, the TCPA subjects the "[i]ndustry to a comprehensive regulatory scheme that requires expertise or uniformity in administration." *Matlock*, 2014 WL 1155541, at *2. Last, a stay of this case would promote "[u]niformity in the administration of the TCPA because a central issue presented in this case – whether liability under the TCPA attaches for non-telemarketing calls placed to reassigned or wrong wireless telephone numbers – is already under submission before the FCC in two pending petitions." *Barrera,* 2014 WL 1942829, at *3.

Finally, a stay is necessary to prevent inconsistent rulings. There is presently significant disagreement among courts regarding whether a "called party" is the actual recipient or the intended recipient, which should further counsel a stay of these proceedings to avoid additional inconsistent rulings. *See, e.g., Cellco P'ship v. Wilcrest Health Care Mgmt. Inc.*, No. 09-cv-3534, 2012 WL 1638056, at *7 (D.N.J. May 8, 2012) ("A burgeoning body of case law establishes that only the "called party," *i.e.,* the "intended recipient," has statutory standing to bring suit under the TCPA."); *Chyba v. First Fin. Asset Mgmt., Inc.*, No. 12–cv–1721, 2014 WL 1744136, at *11 (S.D. Cal. Apr. 30, 2014) (no liability for wrong number because "it would be

incongruous with the larger statutory and regulatory scheme to interpret TCPA to require that a debt collector be liable for acting where it had a good-faith basis for doing so"); *Leyse v. Bank of America*, No. 09-cv-7654, 2010 WL 2382400, at *4-6 (S.D.N.Y. June 14, 2010) (unintended recipient of a call was not the "called party" under the TCPA); *Olney v. Progressive Cas. Ins. Co.*, No. 3:13–cv–2058, 2014 WL 294498, at *3 (S.D. Cal. Jan. 24, 2014) ("called party" is not limited to "intended recipient"); *Soppet v. Enhanced Recovery Co. LLC*, 679 F.3d 637, 643 (7th Cir. 2012) (noting that the FCC has not made a determination with respect to "called party" and holding that "called party" under the TCPA "means the person subscribing to the called number at the time the call is made.").  The issue is ripe for determination by the FCC, and it is sensible for this action to be stayed pending a final determination of just how this split in authority should be resolved.

### C.      Numerous Other Courts Have Issued Stays in Similar Cases.

A number of other federal courts have stayed TCPA actions pending the FCC's resolution of the United Healthcare and ACA Petitions.  *See Gusman,* 2014 WL 2115472, at *3-4 (in an action brought under the TCPA where the defendant attempted to collect on a debt by calling a number that had been reassigned to the plaintiff, granting a stay pending outcome of United Health care and ACA petitions); *Barrera*, 2014 WL 1942829, at *34 (same); *Matlock*, 2014 WL 1155541, at *1-2 (granting stay and denying Plaintiff's Motion to Certify Class pending outcome of United Healthcare Petition); *Fontes*, 2014 WL 2153919, at *2 (declining to address whether action should be stayed under the primary jurisdiction doctrine but staying action on its own motion for 120 days pursuant to its inherent power to control its docket). Kohl's respectfully requests that this Court grant the same relief here.

## CONCLUSION

For the foregoing reasons, Kohl's respectfully requests that Plaintiff's class allegations be stricken because she is not a member of the class that she seeks to represent.  Furthermore, this action should be stayed.   Plaintiff's Complaint rests entirely on the pending FCC Petitions described above.  Given that the FCC is poised to act on the issue, and that there is no question that the FCC has primary jurisdiction with regard to the interpretation of the law under which Plaintiff seeks recovery, this action should be stayed until the FCC resolves these petitions, or until a reasonable time has passed to allow the FCC to express its opinion.

Date:   December 31, 2014                              Respectfully submitted,


/s/ Thomas F. O'Gara
Thomas F. O'Gara, Attorney No. 19678-49
Jeffrey D. Stemerick, Attorney No. 29499-53
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN  46204-2023
(317)713-3500 (Phone)
(317)713-3699 (Fax)
togara@taftlaw.com
jstemerick@taftlaw.com

Lauri A. Mazzuchetti
Michael Innes
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, NJ  07054
(973) 503-5900 (Phone)
(973) 503-5950 (Fax)
lmazzuchetti@kelleydrye.com
mines@kelleydrye.com
(Admitted *Pro Hac Vice*)

*Attorneys for Defendant*
*Kohl's Department Stores, Inc.*

## **Certificate of Service**

I certify that a copy of the foregoing was filed electronically on December 31, 2014.

Notice of this filing will be sent to the following parties by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.

Robert E. Duff
Robert@robertdufflaw.com

J. Dominick Larry
nlarry@edelson.com

Rafey S. Balabanian
rbalabanian@edelson.com

Benjamin H. Richman
brichman@edelson.com

/s/ Thomas F. O'Gara

2301965.1

18